601 So.2d 818 (1992)
Robbie DeLAUGHTER
v.
LAWRENCE COUNTY HOSPITAL and Roger Collins, M.D.
No. 07-CA-59416.
Supreme Court of Mississippi.
April 22, 1992.
As Corrected on Denial of Rehearing July 1, 1992.
*819 John H. Cocke, Merkel & Cocke, Clarksdale, for appellant.
J. Robert Ramsay, Nancy E. Steen, Bryant Clark Dukes Blakslee Ramsay & Hammond, Hattiesburg, Stephen P. Kruger, Albert B. White, Upshaw Williams Biggers Page & Kruger, Jackson, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:

I.
On the morning of Saturday, February 2, 1985, seventy (70) year old Tera Lambert was taken by ambulance from her home to the Lawrence County Hospital (hereinafter "the Hospital"), seen by the emergency room physician, Dr. Roger Collins, and admitted to the Intensive Care Unit. Ms. Lambert's regular physician, Dr. Brantley Pace, examined her Sunday afternoon; she was stable. At approximately 10:00 p.m. Sunday evening, the ICU nurse, who had just come on shift, observed that Ms. Lambert's blood pressure was elevated, she was confused, her speech was non-intelligible, and she was having an abnormal heart rhythm. The nurse notified Dr. Collins who, without assessing the patient, told the nurse to continue Ms. Lambert's present treatment.
At approximately 8:00 a.m. on Monday morning, Ms. Lambert had a grand mal seizure. As a result of the seizure, Ms. *820 Lambert became comatose. She was transferred to St. Dominic Hospital in Jackson, Mississippi, upon the orders of Dr. Pace. A CT scan was performed which indicated that Ms. Lambert had a subarachnoid aneurysm, which had hemorrhaged. Ten days later the aneurysm ruptured and Ms. Lambert died.
Robbie DeLaughter, one of Ms. Lambert's eight (8) children, filed suit on behalf of all the children against Lawrence County Hospital, Dr. Collins and Dr. Pace in January, 1987, alleging wrongful death resulting from failure to diagnose and negligence in destruction of hospital records. Following discovery, Dr. Pace was dismissed from the suit. After five (5) days of trial, the jury returned a 9-3 verdict in favor of the Hospital and Dr. Collins. DeLaughter filed a Motion for a New Trial, which the trial court overruled. Aggrieved, DeLaughter timely perfected appeal to this Court raising three assignments of error. Finding merit to two assignments of error, we reverse and remand for a new trial on the merits as to Lawrence County Hospital.

II.
DeLaughter divides her first assignment of error  that the jury verdict was the result of bias and prejudice  into three (3) sub-assignments: the jury verdict was (1) against the overwhelming weight of the evidence; (2) the result of pressure exerted upon the jury in the form of community rumors which tainted the jury venire and hospital personnel in attendance at trial; and (3) the result of jury tampering. We have carefully reviewed the record in this case with each of these sub-assignments in mind.
Although DeLaughter argues on appeal that the verdict is against the overwhelming weight of the evidence, we note that she failed to raise this sub-assignment as a ground for a new trial in the lower court. Our law is well established that generally this Court refuses to review a claim that a verdict is contrary to the overwhelming weight of the evidence when the assignment is raised for the first time on appeal. See Howard v. State, 507 So.2d 58 (Miss. 1987); Ponder v. State, 335 So.2d 885 (Miss. 1976); Cooper v. Lawson, 264 So.2d 890 (Miss. 1972); Mercier v. Davis, 234 So.2d 902 (Miss. 1970). Following this rule, we find that DeLaughter is procedurally barred from raising this sub-assignment of error on appeal.
Likewise, we decline to review DeLaughter's second sub-assignment. We find the record void as to the composition of the audience during the five (5) days of trial. We, further, find that DeLaughter voiced no objection as to the composition of the jury venire or the composition of the jury selected to hear her case. In accordance with our case law, this sub-assignment of error is not properly before us as DeLaughter failed to preserve the issue for appeal. See Moore v. Moore, 558 So.2d 834 (Miss. 1990); White v. State, 532 So.2d 1207 (Miss. 1988); Britt v. State, 520 So.2d 1377 (Miss. 1988); Methodist Hospitals of Memphis v. Guardianship of Marsh, 518 So.2d 1227 (Miss. 1988); Jenkins v. State, 483 So.2d 1330 (Miss. 1986).
We do review the third and most serious sub-assignment of error  the question of jury tampering. This Court holds to "the long honored principle that `[w]hatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions.' Lee v. State, 226 Miss. 276, 286, 83 So.2d 818, 821 (1955)." Great American Surplus Lines Ins. v. Dawson, 468 So.2d 87, 90 (Miss. 1985); see also Selleck v. S.F. Cockrell Trucking, Inc., 517 So.2d 558, 560 (Miss. 1987). In civil cases, this Court leaves the grant or denial of a mistrial or new trial founded upon juror misconduct to the sound discretion of the trial court. Atwood v. Lever, 274 So.2d 146, 147 (Miss. 1973). "A mistrial or a new trial should not be granted on this ground in a civil case, unless the circumstances indicate some prejudice, wrongful intent, or unfairness." Id.; see also Middleton v. Evers, 515 So.2d 940 (Miss. 1987); Great American Surplus Lines Ins. v. Dawson, 468 So.2d 87 (Miss. 1985).
*821 The only evidence in the case sub judice of what we could classify as attempted improper contact with a juror is a telephone call by a person or persons unknown received by the husband of a juror on the third day of trial. The juror reported the incident to the trial court and indicated that the attempted contact would have no effect on her service. The trial court allowed the juror to remain on the jury. The trial court also became aware of rumors concerning jury tampering of another juror, but after a thorough investigation, the trial court concluded that the rumors were unfounded. After careful consideration, we find that neither of these instances, nor their circumstances, "indicate some prejudice, wrongful intent, or unfairness" which would require reversal and new trial based on jury tampering.
In sum, we conclude that the trial court did not err in denying DeLaughter's Motion for a New Trial as to this assignment of error.

III.
DeLaughter next argues that the trial court erred by refusing three (3) jury instructions concerning the failure of the Hospital to maintain accurate and detailed medical records as required to be kept by every hospital on its patients. Miss. Code Ann. § 41-9-63 (1972), and § 41-9-69 (Supp. 1990). The patient's hospital record, an integral component in any malpractice action against the hospital, contains information impossible to adequately reconstruct from memory. In this case, however, a reconstructed medical record was presented.
The evidence in this case shows that the Hospital refused to release Ms. Lambert's medical records to her family without proper authorization. On March 5, 1985, after the death of Ms. Lambert, the Director of Nurses at Lawrence County Hospital instructed the records custodian to lock up Ms. Lambert's record so that the family could not get them. When the records custodian attempted to comply with the instructions, she discovered that Ms. Lambert's hospital records were missing.
The records had last been seen in the Hospital two or three days prior to March 5, 1985, sitting in Dr. Pace's box awaiting dictation of Ms. Lambert's discharge summary. Upon discovery that the chart was missing, the Hospital set about reconstructing the file by gathering copies of items from the various medical departments within the Hospital. When reconstructed, the chart was incomplete, lacking the medical history or physical assessment taken by Dr. Collins on Ms. Lambert's admission to the Hospital on February 2, and the "nurses' progress notes" compiled during Ms. Lambert's hospitalization from February 2 through the morning of February 4 when Ms. Lambert was transferred to St. Dominic Hospital. One of the "nurses' progress notes" contained the ICU nurse's observations of Ms. Lambert from 10:00 p.m. on February 3 until 1:30 a.m. on February 4.
This issue concerns what the jury was entitled to hear and what instruction should have been given regarding the reconstructed medical records. The jury was entitled to be told the original hospital record would not be produced in court, as that was a relevant fact. The hospital had the duty to give an adequate explanation for the absence of the original hospital record. Therefore, the jury was entitled to be told why the original hospital record was missing, also a relevant fact.
As with any other evidence, the explanation for the original record's absence may be fully satisfying either that it was lost through no fault of the hospital, that the hospital deliberately destroyed it, or as in most cases, somewhere in between, thereby making it a jury issue. For example, where the evidence is positive that the hospital had been destroyed by fire, such circumstance would adequately account for the loss of the original medical record without fault attributable to the hospital, and there would be no reason for the jury to be instructed on a presumption or inference arising from the loss.
On the other hand, where the evidence is positive that the hospital deliberately destroyed the original medical record *822 or where a record required by law to be kept is unavailable due to negligence, an inference arises that the record contained information unfavorable to the hospital, and the jury should be so instructed. This is precisely the situation when a patient claims the medical privilege and prevents his physician from testifying in court. Pittman v. Mendenhall-Mims Mitchell Funeral Home, Inc., 242 Miss. 877, 137 So.2d 518 (1962). Likewise, where the evidence is somewhere in between such that the jury could find that the hospital either had or had not deliberately or negligently destroyed the original medical record, the jury should be instructed to take this into account.
Thus, where the evidence regarding the missing original medical records is such that the jury is entitled to an instruction, the instruction should require the jury to first determine whether reasonable explanation for the loss of the missing original medical record has been presented by the hospital. Should the jury determine from the explanation provided that the loss of the original medical record was not in any way attributable to the deliberate or negligent actions of the hospital, the jury could not infer that the missing original medical record contained information unfavorable to the hospital. However, should the jury determine from the explanation provided that the loss of the original medical record was deliberately or negligently brought about by the actions of the hospital, the jury could infer that the missing original medical record contained information unfavorable to the hospital.
This Court has spoken rather clearly on this subject. In Bott v. Wood, 56 Miss. 136 (1878), we held:
The principle of the maxim Omnia praesumuntur in odium spoliatoris, as applicable to the destruction or suppression of a written instrument, is that such destruction or suppression raises a presumption that the document would, if produced, militate against the party destroying or suppressing it, and that his conduct is attributable to this circumstance, and, therefore, slight evidence of the contents of the instrument will usually, in such a case, be sufficient. There is great danger that the maxim may be carried too far. It cannot properly be pushed to the extent of dispensing with the necessity of other evidence; and should be regarded "as merely matter of inference, in weighing the effect of evidence in its own nature applicable to the subject in dispute. 2 Best on Ev., sec. 412 et seq.

The doctrine is, that unfavorable presumption and intendment shall be against the party who has destroyed an instrument which is the subject of inquiry, in order that he may not gain by his wrong. (Footnote omitted)
56 Miss. at 140-141. Where, as here, one is under a statutory obligation to maintain records and where one was negligent in failing to do so, the same analysis obtains.
The evidence in this case is such that DeLaughter was entitled to an instruction regarding the missing original medical records. In light of our analysis on this issue, we review each of DeLaughter's three (3) proposed instructions.
Instruction P-8 reads as follows:
The Court instructs you that if you find that the hospital records in this case were intentionally destroyed by the defendant hospital, then you should return a verdict against the hospital in the full amount of the plaintiff's damages.
This instruction creates an impermissible irrebuttable presumption of negligence. While this Court does not advocate destruction of evidence, we also do not irrevocably impose liability because of it. We find that the trial court did not err in refusing this instruction.
The trial court, also, did not err by refusing Instruction P-4. Instruction P-4 reads as follows:
If you find that the Defendant [hospital] negligently or intentionally failed to maintain the medical records of Tera Lambert and you further find that the failure to maintain such records proximately contributed to the failure of the Plaintiff to prove any essential element *823 of her case, then you should return a verdict for the Plaintiff against the Defendant hospital in the full amount of the Plaintiff's damages.
This instruction is improper because negligent treatment is not inferred from the missing hospital record. The failure by the Hospital to show that it did not lose or destroy the missing record only creates a jury issue as to whether the Hospital rebutted the presumption that the missing information in the record would have been unfavorable to the Hospital. DeLaughter still was required to prove each element of her negligence action.
The trial court also should not have granted Instruction P-7. Instruction P-7 reads as follows:
If you find the Defendant Hospital negligently failed to maintain the hospital records, the burden of proving that the hospital was not negligent and that the hospital's negligence did not cause the death of Tera Lambert rests upon the Defendant Hospital and that if the Defendant Hospital does not prove beyond the preponderance of the evidence that it was not negligent and that such negligence did not cause the death of Tera Lambert then you should return a verdict for the plaintiff.
This instruction clearly would have shifted the burden of proof on the issue of negligence to the Hospital. The burden does not shift; DeLaughter was only entitled to have the jury presume the missing information in the Hospital record, which the Hospital did not show was favorable to the Hospital, was unfavorable to it.
Because DeLaughter did not submit a proper instruction, we find that the trial court did not err in refusing the submitted instructions. Had we found one of DeLaughter's instructions proper, we would have considered the Hospital's argument that instruction D-1-12, which was withdrawn at the request of both DeLaughter and Lawrence County Hospital, was a proper instruction.
Due to the absence of law on this issue, we will arguendo address this contention. Instruction D-1-12 reads in pertinent part:
The Court instructs the jury that if you determine by a preponderance of evidence that either the Plaintiff or the Defendants caused the original Lawrence County Hospital records of Tera Lambert to become either destroyed, misplaced, or unavailable then the jury may infer that such records, which are not a part of the recreated record would be unfavorable to such party, if any, determined to be the party responsible and the jury may give to such evidence whatever weight, worth and credibility the jury determines it is entitled.
This instruction correctly creates a rebuttable presumption that the information contained in the missing documents was unfavorable to the party which the jury finds caused the loss of Ms. Lambert's hospital record. Bott v. Wood, 56 Miss. 136, 140-41 (1878) (all things are presumed against the spoliator). However, the instruction fails to inform the jury that the Hospital has the burden to show it did not destroy or misplace the hospital record. The party against whom the presumption operates must overcome the presumption; otherwise, the presumption operates against the party.
In sum, we find that the hospital chart was not fully reconstructed. We further find that the trial court erred in failing to place the burden of proof on the Hospital to show that the chart was not lost or destroyed by the Hospital. In addition, we find that the trial court erred in failing to give an instruction on the spoliation issue. We recognize that DeLaughter did not submit a proper instruction on this issue; however, based upon the record now before us, we cannot say that the error was harmless.

IV.
DeLaughter next complains that the trial court erred in directing a verdict in favor of the Hospital with regard to the independent acts of negligence of the Hospital nurses and ambulance drivers. This record contains no motion for directed verdict against or for the Hospital for the independent *824 acts of its personnel, nor does the record reflect that DeLaughter presented a peremptory instruction on the liability of the Hospital for the independent acts of its personnel. DeLaughter argues that the trial court effectively directed a verdict in favor of the Hospital by denying Jury Instruction P-3, as modified.
Instruction P-3, as modified, reads as follows:
The Court instructs you that the nursing personnel of the Lawrence County Hospital had the responsibility to exercise due care in the treatment of Tera Lambert. If you find from a preponderance of the evidence that the personnel of the Lawrence County Hospital failed to exercise due care in the treatment of Tera Lambert in failing to take appropriate history of Tera Lambert, from Tera Lambert or other family members, failed to appropriately observe Tera Lambert's condition and contact appropriate physicians or otherwise failed in the care provided Tera Lambert and you further find that such failure to provide appropriate care proximately contributed to Tera Lambert's death, then you should return a verdict for the Plaintiff against the Defendant hospital.
The trial court denied the instruction upon finding that DeLaughter showed no proof to establish any standards of care for nurses.
This Court articulated the standard of review necessary when considering the grant or denial of jury instructions in Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986):
By analogy to our familiar test as to when any fact question may be taken from the jury, our rule is this: The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court  and this Court on appeal  can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inference which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction. Cf. Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984).
(Emphasis added)
Jury instructions are to be granted only where evidence has been presented which supports the instruction. Copeland v. City of Jackson, 548 So.2d 970, 973 (Miss. 1989); Graves v. Graves, 531 So.2d 817, 821 (Miss. 1988); Detroit Marine Engineering v. McRee, 510 So.2d 462, 465 (Miss. 1987). "A party to an action is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction." Copeland v. City of Jackson, 548 So.2d 970, 973 (Miss. 1989) [quoting Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986)]. Likewise, "[b]efore a jury may be instructed upon a specific element of damages, there must be some testimony to support that element." Graves v. Graves, 531 So.2d 817, 821 (Miss. 1988).
DeLaughter seeks to impose liability upon Lawrence County Hospital for the negligent acts of its employees. Under the doctrine of respondeat superior, this Court has articulated the following standard:
In order to prevail in a suit based on the negligence of a hospital or of an employee whose liability will be imputed to the Hospital, the plaintiff must satisfy four elements. First, it must be shown that the defendant had a duty to act in accordance with a standard of reasonable care so as to prevent injury to a foreseeable plaintiff. Second, the plaintiff must demonstrate the defendant's failure to conform to the applicable standard of care. This element is referred to as the breach of duty. Third, the plaintiff must prove that the defendant's breach of duty was the proximate cause of the plaintiff's injury... .
Finally, the plaintiff must show that he or she suffered actual harm or injury as *825 a result of the defendant's negligent conduct.
Boyd v. Lynch, 493 So.2d 1315, 1319 (Miss. 1986) [quoting P. Lasky, 11B Hospital Law Manual, Principles of Hospital Liability, § 1-1, 1 (1986)].
Rosemary Brister, the Director of Nurses at Lawrence County Hospital, testified that if a nurse has a problem getting a doctor, then the nurse should call the backup doctor or the patient's own personal physician. If the nurse gets no "response to their satisfaction after this sequence of events, then they're to call me [Ms. Brister]... ."[1]
Dr. Collins, the emergency room physician, testified that the medical personnel, including the nurses, who responded to ambulance calls were responsible for taking histories and recording important medical information that they learned while on their call. In this particular case, Dr. Collins testified that the nurse who responded to the ambulance call should have told him that Ms. Lambert had a cardiopulmonary arrest. Dr. Collins further testified that the critical care nurse should have notified him if she became aware of any neurological symptoms and particularly should have informed him of the nurse's observations charted in the nurses' notes at 10:00 p.m. on February 3.[2]
Dr. Weisburg, an expert witness, also testified to a standard of care. He stated that when a patient begins to have symptoms similar to that which occurred at 10:00 p.m. on February 3, a nurse needs to have a physician evaluate the patient.
After reviewing the record, we find that instruction P-3 should have been granted. Three witnesses testified to a standard of care which the nurses should have met. Additionally, since the jury could conclude that the information in the missing documents was unfavorable to the Hospital, the evidence was sufficient for the jury to have found that the nurses had a duty and breached the duty, that a causal connection existed between the alleged nurses' negligence and Ms. Lambert's seizure, subsequent coma and resulting death. This assignment of error has merit, and this case must be reversed as to the verdict in favor of the Hospital.

CONCLUSION
Having found merit to the second and third assignments of error, the order of the Circuit Court of Lawrence County, Mississippi, overruling DeLaughter's Motion for a New Trial is affirmed as to Dr. Collins and reversed for a new trial against Lawrence County Hospital.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., specially concurs by separate written opinion, joined by SULLIVAN and BANKS, JJ.
McRAE, Justice, specially concurring:
I join in the holding of the majority and agree for the most part with its reasoning. I write, however, to express what I perceive to be the proper application of the Spoliation Doctrine to cases where a hospital loses or destroys a patient's medical records.
Stated simply, the Spoliation Rule holds that where evidence is lost, destroyed, or suppressed, the jury is entitled to presume or infer that the missing evidence would be unfavorable to the party responsible for its *826 unavailability. See 1 B. Jones, Evidence § 3:90 (S.Gard 6th ed 1972); see also Black's Law Dictionary, "Spoliator" at 1573 (rev. 4th ed. 1968) ("It is a maxim of law, bearing chiefly on evidence, ... that everything most to his disadvantage is to be presumed against the destroyer"). The rule often finds application in medical malpractice actions where health care facilities are unable or unwilling to produce patients' medical records.[1]
As the majority correctly notes, the Spoliation Rule does not require a health care provider to prove the absence of negligence in cases where records are unavailable. The plaintiff still bears the burden of proof. But if the jury presumes unfavorability, the party responsible for the absence of the records takes on the risk of non-persuasion on the question of which party, if any, the records would have favored had they been available.
I disagree with the majority in at least three respects. First, the majority wrongly concludes that the Spoliation Rule comes into play only when a hospital "deliberately" destroys a record. Both intentional and negligent loss of medical records can constitute spoliation. See Public Health Trust v. Valcin, 507 So.2d 596, 598-99 (Fla. 1987). Some courts in other states have limited the doctrine to intentional loss on grounds that mere negligent loss, unlike intentional loss, does not suggest that the party responsible for the loss had something to hide. See, e.g., Thor v. Boska, 38 Cal. App.3d 558, 113 Cal. Rptr. 296 (Cal.Ct. App. 1974). In Mississippi, however, hospitals have a statutory duty to preserve the medical records of their patients. See Miss. Code Ann. § 41-9-61 et seq. (including regulations promulgated pursuant thereto by the State Health Department and/or its accrediting agencies). It is therefore proper for a hospital to bear the risk of non-persuasion concerning the content of missing records even when the circumstances do not overtly suggest a "cover-up." See Valcin, 507 So.2d at 598-99 (negligent failure to uphold statutory duty to maintain records gives rise to rebuttable presumption of unfavorability). On the other hand, if records disappear through no fault of the medical facility (as in the event of the majority's hypothetical "fire"), then the jury should not be permitted to presume unfavorability: The defendant would not be guilty of a breach of duty.
My second point of contention is the majority's failure to recognize that in cases where a hospital deliberately destroys or conceals medical records, the Best Evidence Rule prohibits the hospital from introducing secondary evidence of what the records contained. MRE Rule 1004 states that where original writings are lost or destroyed, "other evidence" of their contents is admissible "unless the proponent lost or destroyed them in bad faith." Accord Gibson v. State, 580 So.2d 739, 741-42 (Miss. 1991). By definition, intentional spoliation invokes the bad-faith exception to the Best Evidence Rule. According to Professor Jones:
If it is shown that a party has attempted to falsify, fabricate, suppress or destroy evidence ... the wrongful act is a circumstance from which the jury may draw the most unfavorable inference against the wrongdoer; his conduct may throw suspicion on all the other evidence produced by him; and it will prevent him from proving the contents of the destroyed documents by any other evidence... . This is a fundamental essential of the Best Evidence Rule.

Jones on Evidence § 3:90 at 319-321 & 321 n. 95 (emphasis added).
Where a defendant hospital willfully destroys or conceals records, it is not permitted to show that the evidence would have favored the hospital or that the evidence would have failed to favor the plaintiff. To allow such evidence would encourage hospitals to "accidentally" lose records and *827 then manufacture "innocent" explanations for the loss. See 5 J. Weinstein, Evidence ¶ 1004(1)[02] at 1004-8 (1991) ("In such a case there is too great a risk that any secondary evidence the proponent might offer would be false or misleading").
Thirdly, I disagree with the majority's categorical conclusion that the jury should decide whether the destruction of records was intentional, negligent, or accidental. MRE Rule 104(a) states that "[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court." When the Best Evidence Rule is invoked, the trial court must make a preliminary determination on the issue of bad faith. Thus, if the party responsible for a loss of the evidence seeks to show that the evidence would not have favored the opposing party, then the trial court must decide the issue of culpability as a preliminary matter. I agree, however, that the jury should be informed as to why the missing evidence is unavailable and should be permitted to draw its own conclusions in reaching a verdict. Further, in cases where the hospital is at fault for a loss of records, the jury should be instructed upon request that the hospital does not necessarily and automatically overcome the presumption of unfavorability by putting on rebuttal evidence. According to 2 J. Wigmore, Evidence § 278 at 133 (J. Chadbourn rev. 1979):
It has always been understood  the inference, indeed, is one of the simplest in human experience  that a party's ... suppression of evidence by ... spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.

Id. (emphasis added).
In other words, the very act of spoliation can haunt the hospital's case even after the hospital introduces evidence to show that the records would not have been particularly helpful to the plaintiff. Since the presumption of unfavorability operates "indefinitely though strongly" against the hospital's entire case and is not solely confined to the specific issue of what information the records contained, the jury is thus still free draw a general inference of unfavorability from the act of spoliation regardless of what the hospital's rebuttal evidence shows concerning the content or effect of the missing records.
Regarding the case now before us, it is difficult to see how a reasonable finder of fact could conclude that the hospital was not responsible for the loss of Ms. Lambert's medical records. The suspicious circumstances, including the instruction from the Director of Nurses to "lock up the records so that the family could not get them" along with the defendant's post-trial "discovery" of formerly misplaced records, strongly suggests deliberate wrongdoing.
I would hold that on remand, the trial court should instruct the jurors that if they believe the defendant negligently or intentionally lost, destroyed, or concealed Ms. Lambert's records, then the jury is permitted to presume that the missing records contained information unfavorable to the defendant. The defendant, of course, could rebut the presumption by introducing evidence showing that the missing records were exculpatory or that they did not support the plaintiff's claims. Should the trial court preliminarily determine that the hospital did away with the records intentionally and in bad faith, however, the defendant's task in rebutting the presumption would become more arduous. The Best Evidence Rule would then prevent the hospital from introducing secondary evidence of the records' content.
I agree that the trial court did not err in refusing Instructions P-4, P-7, and P-8. These instructions improperly shift the burden of proof to the defendant on the issue of negligence and even go so far as to impose an irrebuttable presumption of negligence. Indeed, the instructions are so far off base that the plaintiff's attorney has *828 only very tenuously preserved the spoliation issue. But for the risk of miscarried justice, this Court should probably not be obliged to consider this assignment of error.
In addition, the jurors' conclusions regarding Dr. Collins may well have been different had they been properly instructed. Dr. Collins was responsible for Ms. Lambert's treatment, and he may or may not have had something to do with the fate of her records. The Spoliation Rule would apply to him in the same manner it applies to the hospital. Since no assignment of error with merit has been placed before the Court pertaining to Dr. Collins, the majority did not reach point, and I agree.
SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] Although not stated very precisely, Ms. Brister is stating that nurses also are to make judgment calls. If a patient shows signs and symptoms of deterioration, then the physician on-call should be notified. If the physician does not respond or takes an action which further compromises the patient, then the nurse should call the on-call physician again, the primary physician, or the nursing supervisor.
[2] Dr. Collins denied that the nurse notified him of all her observations charted in the nurses' notes, which read patient "confused, disoriented, tossing, thrashing in bed. Eyes have a spaced look. PEARL (pupils equal and reactive to light). [Heart] monitor shows frequent PVC's [with heart rate] 62, elevated ST-seg. Speech not intelligible, just mumbles. Bedrails [elevated]. BP 240/120 ... Dr. Collins called. No order change... ."
[1] See Annotation, Neducak Malpractice: Presumption or Inference from Failure of Hospital or Doctor to Product Relevant Medical Records, 69 A.L.R.4th 906, 908 (1989). The practice of destroying, concealing, or altering medical records in order to avoid or stymie malpractice suits is reportedly widespread. See Hirsch, Tampering with Medical Records, 1979 Med.Trial Tech.Q. 450.