813 So.2d 775 (2002)
Charles STATEN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01857-COA.
Court of Appeals of Mississippi.
March 12, 2002.
*776 Allan D. Shackelford, Clarksdale, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
*777 BRIDGES, J., For The Court.
¶ 1. The grand jury for Quitman County indicted Charles Staten on January 31, 2000, for the murder of Curtis Adams. Staten's trial began on March 6, 2000. The jury rendered a guilty verdict, and the court sentenced Staten, as a habitual offender under Mississippi Code Annotated Section 99-19-83 (2000), to life imprisonment without possibility of parole.
¶ 2. Staten moved for a judgment notwithstanding the verdict, or in the alternative for a new trial. The court denied both motions. Staten perfected an out-of-time appeal, and made two assignments of error.

STATEMENT OF ISSUES
I. DID THE COURT ERR BY DENYING STATEN A NEW TRIAL?
II. DID THE COURT ERR IN DENYING STATEN A LOST EVIDENCE INSTRUCTION?
¶ 3. Finding no error in the trial court's judgment, we affirm.

FACTS
¶ 4. On October 29, 1999, Charles Staten (Staten) and his brother Tim (Tim Staten) were outside a bar in Marks, Mississippi, when they got into a fight with a group of young men that included Curtis Adams. Staten sustained injuries during the fight, and Adams and his friends, Jamien Thompson, Charles O'Neal, and Kenneth Jamison, departed. Staten spoke with Officer Maybery of the Marks Police Department, and told him that Adams had injured him. Maybery told Staten to "cool off" and went to look for Adams.
¶ 5. Staten, his brother, and Staten's girlfriend, LaKizzy Webb, planned to take Staten to the hospital to treat a wound received during the fight. On the way to the hospital, they stopped at Tim Staten's residence so that Tim Staten could change his clothes. While they were stopped, Staten approached a car parked across the street and fired shots into the car, mortally wounding Curtis Adams and injuring Kenneth Jamison.

ANALYSIS

I. DID THE COURT ERR BY DENYING STATEN A NEW TRIAL?
¶ 6. Staten asks this Court to overturn his verdict on the weight of the evidence and order a new trial. Unfortunately for Staten, the weight of the evidence in this case hangs against him, as in a motion for a new trial all facts are construed in favor of the non-moving party. The trial court has discretion to grant a new trial, thus: "we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983).
¶ 7. Staten relies on the fact that during trial no one testified that they saw a bullet fired by Staten strike Curtis Adams. No evidence was presented indicating that any one else shot at Adams that night, nor that the bullet which killed Adams could not have come from Staten's gun. Each witness that was in the car with Adams that night identified Staten as the shooter.
¶ 8. The presumption of the law is that each person intends the natural consequences of his actions. Hydrick v. State, 246 Miss. 448, 450-451, 150 So.2d 423, 424 (1963). Absent any contrary testimony or any evidence that would exculpate Staten from the murder of Adams, it is impossible for this Court to order a new trial, as the *778 verdict is supported by the weight of the evidence. Pearson, 428 So.2d at 1364.

II. DID THE COURT ERR IN DENYING STATEN A LOST EVIDENCE INSTRUCTION?
¶ 9. Staten assigns as error the court's refusal to grant a lost evidence instruction in regard to a potential photograph of Kenneth Jamison's wound. The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial courtand this Court on appealcan say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inference which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction. DeLaughter v. Lawrence County Hosp., 601 So.2d 818, 824 (Miss.1992). See also Lee v. State, 469 So.2d 1225, 1230-31 (Miss.1985); Fairchild v. State, 459 So.2d 793, 801 (Miss.1984).
¶ 10. Staten argued at trial that the photograph could provide evidence of a second shooter, because the testimony of the witnesses in the car stated that Staten fired from the side of the car, and not the rear, where Staten argued the person who shot Jamison, and presumably Adams, shot from. If this evidence could be presented, it might reflect on Staten's first assignment of error as well.
¶ 11. Staten suggests the State violated its duty to provide him with exculpatory evidence when the photograph was lost. "The State's duty to preserve evidence is `limited to evidence that might be expected to play a significant role in the suspect's defense.'" Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987) (quoting California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Staten's theory of defense encompasses the photograph sufficiently that the photograph plays a significant role, at least for purposes of the argument:
To play a significant role, "the exculpatory nature and value of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means." This constitutional materiality standard is not satisfied by the "mere possibility" that the evidence will help the defense. That evidence is "important" is not sufficient to fulfill the constitutional standard of materiality.
Jackson v. State, 766 So.2d 795, 801 (¶ 10) (Miss.Ct.App.2000) (citations omitted).
¶ 12. No one ever saw the photograph. The instruction Staten seeks would be appropriate only if the prior existence of the photograph was known, because of the particular force of the instruction he seeks:
This instruction correctly creates a rebuttable presumption that the information contained in the missing documents was unfavorable to the party which the jury finds caused the loss of Ms. Lambert's hospital record. The party against whom the presumption operates must overcome the presumption; otherwise, the presumption operates against the party.
DeLaughter v. Lawrence County Hosp., 601 So.2d 818, 823 (Miss.1992) (citations omitted).
¶ 13. There was no evidence presented at trial to establish the existence of photographs. According to the testimony of Kenneth Jamison, a white male took a photograph of the wound he suffered in the attack. The photograph may have *779 been taken with a Polaroid or other instant camera, but Jamison never saw a photograph. The sheriff testified that no one at the sheriff's office knew of a photograph, nor of anyone who took a photograph. Further, during his testimony, Jamison presented his scarred shoulder to the court for examination. The jury's duty to weigh all of the evidence duly presented extends to evidence of Jamison's wound, which neither the State nor the defense contested.
¶ 14. While the photograph may be important, the presumption of spoliation cannot be supported because there is no proof of the photograph's existence. This may be distinguished from DeLaughter, where regular hospital records were lost in a fire. DeLaughter, 601 So.2d at 821. The photograph's existence must first be established before a presumption of spoliation may present itself. Since the witness who testified to being photographed never saw a photograph, and none was found in the sheriff's custody, the defense was not entitled to a spoliation instruction, and accordingly received none.

CONCLUSION
¶ 15. Staten asserts a profound miscarriage of justice in his first assignment of error, that the verdict of guilty is against the overwhelming weight of the evidence presented. Because the facts are viewed in favor of the non-moving party, Staten's appeal fails on its first point. At trial, Staten presented no exculpatory evidence. Each eyewitness identified him as the shooter. Thus, the jury's verdict must stand, absent other error.
¶ 16. Staten also argues for a lost evidence instruction for a photograph which may adduce evidence of a second shooter. However, the substance of the photograph is unknown; the existence of the photograph was never established at trial. Appropriate testimony from the putative custodian of such a photograph (the sheriff) indicated that no photograph could be found. Since Staten's requested instruction requires that the evidence have existed at some point, the court properly denied such an instruction.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF MURDER AND SENTENCE AS AN HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.