933 So.2d 310 (2006)
Jason Kirby VEDE and Debra Vede, Appellants
v.
DELTA REGIONAL MEDICAL CENTER, Appellee.
No. 2004-CA-01418-COA.
Court of Appeals of Mississippi.
June 27, 2006.
*311 Philip Mansour, Greenville, J.E. Cullens, attorneys for appellants.
Robert R. Stephenson, L. Carl Hagwood, Jackson, attorneys for appellee.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Jason and Debra Vede appeal the Circuit Court of Washington County's ruling in favor of Delta Regional Medical Center in a medical malpractice action brought pursuant to the Mississippi Tort Claims Act. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On January 12, 2000, Jason Vede was in an automobile accident in which he sustained burns to eighteen percent of his body, as well as a severe inhalation injury. He was originally admitted to Southwest Mississippi Regional Medical Center, but was transferred to the burn center at Delta Regional Medical Center (Delta) in Greenville, Mississippi, on January 13. He remained at Delta for two months before being transferred to the Methodist Rehabilitation Center in Jackson. During his stay at Delta, Jason developed a decubitus ulcer  commonly referred to as a bed sore  on his coccyx, or tailbone. In their complaint against Delta, the Vedes alleged that Jason developed the ulcer because Delta's employees negligently failed to turn him at regular intervals. Specifically, the Vedes alleged that Delta turned Jason only seven percent of the time he was required to be turned up to the day he developed the ulcer, and that, overall, he was turned only eighteen percent of the required time.
¶ 3. At trial, the Circuit Court of Washington County, sitting as the trier of fact pursuant to the Mississippi Tort Claims Act, found that the Vedes failed to prove by a preponderance of evidence that Delta acted negligently, and further failed to prove that the alleged acts or omissions of Delta proximately caused Jason to develop the ulcer. On appeal, the Vedes challenge the circuit court's findings of fact and conclusions of law.

STANDARD OF REVIEW
¶ 4. In an action brought pursuant to the Mississippi Tort Claims Act, the trial court sits as the finder of fact. Miss. Code Ann. § 11-46-13(1) (Rev.2002). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." City of Jackson v. Internal Engine Parts Group, Inc., 903 So.2d 60, 63(¶ 7) (Miss.2005). Questions of law, however, are reviewed de novo. Id.

ISSUE AND ANALYSIS
¶ 5. To establish a prima facie case of medical negligence, a plaintiff must prove that (1) the defendant has a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of his duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result. Lyons v. Biloxi H.M.A., Inc., 925 So.2d 151, 154(¶ 14) (Miss.Ct.App. 2006) (citing Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss.1987)). Generally, these elements must be proven by expert testimony. Young v. Univ. of Miss. Med. Ctr., 914 So.2d 1272, 1276(¶ 15) (Miss.Ct.App. 2005). Because a plaintiff must prove each *312 of the above elements in order to prevail, the failure to prove a single element is fatal to the claim. Thus, in the present case, because we affirm the trial court's finding that Delta did not breach the applicable standard of care, we need not examine whether Delta's actions were the proximate cause of Jason Vede's damages.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE EMPLOYEES OF DELTA COMPLIED WITH THE STANDARD OF CARE IN PREVENTING, AND LATER MANAGING, JASON'S ULCER.
¶ 6. Delta's in-house protocols, as well as national guidelines, recommend that a patient at risk for skin breakdown be turned by hospital staff at least once every two hours; the Vedes assert that there was no reason for Delta to deviate from these guidelines. Using these standards as a benchmark, the Vedes claim that Jason was only turned seven percent of the time he was required to be turned up to the day he developed the ulcer, and that, overall, he was turned only eighteen percent of the required time. In support of these contentions, the Vedes assert that uncontradicted medical records from Delta make it clear that Delta was negligent in caring for him. Further, the Vedes argue that there was no valid reason for Delta to deviate from the turning guidelines in his case. However, we find substantial evidence in the record to the contrary.
¶ 7. Rita Wray, one of Delta's experts, testified that the hospital's turning "guidelines" are, by definition, suggestions, and not strict requirements. Therefore, she testified, Delta's nurses and physicians have discretion to deviate from the guidelines if such a departure is warranted by a patient's condition. Testimony from Wray and from Dr. Calvin Ramsey established that the severity of Jason's injuries in fact justified such a deviation. First, Dr. Ramsey testified that upon admission to Delta, medical personnel established the following priorities for Jason, in order of importance: (1) the need for effective airway clearance; (2) pain management; (3) avoiding a fluid volume deficit; and (4) reducing the potential for infection. According to Dr. Ramsey, in order to keep Jason alive, addressing these priorities, especially Jason's need for effective airway clearance, took precedence over managing Jason's risk of developing an ulcer. Wray testified that when Jason was turned to his side, his airway clearance was obstructed and his oxygen saturation level would decrease to dangerously low levels. However, Wray testified, when Jason was returned to the supine position, his oxygen saturation level would return to a normal level. This correlation between Jason's position and oxygen saturation level led Wray to conclude that, since placing Jason on his back provided him with the most effective airway clearance, keeping Jason in the supine position gave him the best chance to stay alive. Dr. Ramsey, realizing this to be the case, opined that the reason Jason was not turned as often as possible was because it more important that he remained in a position that afforded him more effective airway clearance. Additionally, the record shows that, after discovering Jason's ulcer, Delta placed him in a state-of-the-art bed, which, according to Dr. Ramsey, provided the best possible defense against decubitus ulcers. Furthermore, Wray testified that, upon discovering the ulcer, the nurses at Delta took proper precautions to prevent the risk of further skin breakdown.
¶ 8. Taken as a whole, the testimony by Wray and Dr. Ramsey supports the trial judge's ruling that Delta did not act negligently *313 in caring for Jason.[1] The evidence shows that Delta's first priority was ensuring Jason's survival, and that turning him compromised his ability to breathe. Turning Jason as often as he now suggests he should have been turned was incompatible with Delta's primary mission of keeping Jason alive. While it is unfortunate that Jason developed an ulcer during the course of his stay at Delta, substantial evidence supports the trial court's determination that Delta did not breach its duty of care.
¶ 9. We note further that the Vedes' assertion that the "uncontradicted" medical records showed that Delta acted negligently in caring for Jason is, frankly, misguided. It is true that the medical records at issue in this case show that Jason was not turned every two hours. However, the fact that Jason was not turned once every two hours does not, alone, establish that Delta breached its duty of care to Jason. As stated earlier, it is clear that Delta's decision to turn Jason less often than suggested by its internal guidelines was a product of reasoned medical analysis. Furthermore, it is clear from the record that there was a dispute as to what exactly constituted a "turn" by Delta's employees. For example, the parties offered different opinions as to whether Jason was "turned" during his bed baths and physical therapy sessions: Delta's witness, Rene Seidle, testified that Jason was actually turned during his bed baths twice a day, and often during his physical therapy. However, the Vedes' expert, Rita Frantz, failed to count any of the bed baths as turnings.
¶ 10. It is clear from our review of the record that the trial court's ruling in favor of Delta was supported by substantial, credible evidence. Accordingly, we affirm the ruling of the trial court.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Neither Wray nor Dr. Ramsey treated Jason during his stay at Delta, and Delta did not call as a witness anyone who did in fact treat him. The Vedes argue that Delta's failure to call a treating nurse or physician entitles this Court to presume that testimony from such a witness would have been unfavorable to Delta. We are not persuaded by this argument. The Vedes had every right to call the treating nurses and physicians as witnesses in order to develop their case, and failed to do so.