831 So.2d 1124 (2002)
DOWDLE BUTANE GAS COMPANY, INC., and Jean L. McDowell
v.
Walter S. MOORE.
No. 2000-IA-01884-SCT.
Supreme Court of Mississippi.
December 5, 2002.
*1125 J. Stephen Wright, Ringland, Troy Philip Huskey, Ocean Springs, Walter William *1126 Dukes, Stephen M. Cozart, Gulfport, for appellants.
Grady F. Tollison, Jr., Jerry P. "Jay" Hughes, Jr., Oxford, Beverly Davis Buskirk, New Albany, for appellee.
EN BANC.
SMITH, Presiding Justice, for the Court:
¶ 1. This matter is before this Court on interlocutory appeal from an order of the Circuit Court of Lafayette County granting leave for Walter S. Moore ("Moore") to amend his original complaint against Dowdle Butane Gas Company, Inc. ("Dowdle"). The amended complaint added a claim for intentional spoliation of evidence and joined, as defendants, Reliance Insurance Company ("Reliance") and Jean L. McDowell ("McDowell"). Because this Court has not yet recognized spoliation of evidence as an independent cause of action, we granted the defendants' petition for interlocutory appeal pursuant to M.R.A.P. 5. Reliance has since been dismissed as a party to this appeal.

FACTS
¶ 2. On September 23, 1999, the underground propane tank on Moore's residence in Lafayette County, Mississippi, exploded. The accident occurred while John Currie, an employee of Dowdle Gas, was delivering propane into the tank. Both Moore and Currie were injured.
¶ 3. Dowdle Gas reported the accident to the State of Mississippi's Liquefied Compressed Gas Division of the Department of Insurance, and the State dispatched James Thompson to investigate the scene. Thompson and G.W. Harrell, an employee of Dowdle Gas, approached Moore in the hospital to obtain permission to enter Moore's property. According to Thompson and Harrell, Moore verbally consented to their entry onto the property and investigation of the accident scene, but because Moore was unable to sign a consent form, a friend of Moore's in the hospital room signed Moore's name on Moore's behalf. Moore, however, alleges that he never consented to the investigation.
¶ 4. Reliance, as insurer of Dowdle Gas, contacted Jean L. McDowell, a propane expert and professional engineer, and requested that he participate in an initial inspection of Moore's premises and excavation and removal of the underground tank. Thompson and McDowell entered Moore's property to investigate the accident and ultimately removed the tank from the premises with the assistance of Dowdle Gas employees. The tank is currently held in storage by Dowdle Gas in Oxford, Mississippi.
¶ 5. On September 31, 1999, Moore filed suit against Dowdle Gas in the Circuit Court of Lafayette County. On June 19, 2000, Moore filed a motion to amend his complaint, and Circuit Judge R. Kenneth Coleman granted leave to amend on August 1, 2000. Moore's amended complaint added Reliance and McDowell as defendants. The complaint alleged that Dowdle Gas was liable under three countsstrict liability, negligence per se, and sine qua non.[1] The complaint also alleged that all three defendants were liable for trespass, conversion of chattels, and intentional spoliation of the evidence. Finally, the complaint asserted a claim for fraud against Dowdle and Reliance.
¶ 6. The circuit court certified its ruling for interlocutory appeal, and this Court granted Dowdle's petition for interlocutory appeal, joined by Reliance and McDowell, *1127 on February 9, 2001. Dowdle's petition raises the following issues for review:
I. WHETHER SPOLIATION OF EVIDENCE IS RECOGNIZED AS A INDEPENDENT TORT IN THIS STATE.
II. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ALLOWING MOORE TO AMEND HIS COMPLAINT TO ADD RELIANCE AS A DEFENDANT.
III. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ALLOWING MOORE TO AMEND HIS COMPLAINT TO ADD MCDOWELL AS A DEFENDANT.

DISCUSSION
I. WHETHER SPOLIATION OF EVIDENCE IS RECOGNIZED AS A INDEPENDENT TORT IN THIS STATE.
¶ 7. Moore's complaint alleged that Dowdle Gas, Reliance, and McDowell intentionally destroyed the propane tank, valves, regulator, and gas lines when they removed the same from his property and conducted destructive testing, depriving Moore of the ability to discover the cause of the explosion and, thus, the ability to recover from Dowdle Gas. Tort liability has never been imposed in this jurisdiction for the destruction of evidence. This is a legal issue of first impression that this Court reviews de novo. Blailock v. O'Bannon, 795 So.2d 533, 534 (Miss.2001) (citing Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997)). Since Moore has asserted a claim only for intentional spoliation of evidence, the question of whether we will recognize a separate cause of action for negligent spoliation of evidence we leave for another day.

A.
¶ 8. Though the question at hand is an issue of first impression, evidence spoliation is not a new concept. The traditional response to the problem of evidence spoliation frames the alleged wrong as an evidentiary concept, not as a separate cause of action. Trevino v. Ortega, 969 S.W.2d 950, 952 (Tex.1998). In Mississippi, as in the majority of jurisdictions, proof of spoliation gives rise to a "spoliation inference," recognized by this Court as early as 1878 in Bott v. Wood, 56 Miss. 136 (1878). The inference entitles the non-offending party to an instruction that the jury may infer that spoliated evidence is unfavorable to the offending party. DeLaughter v. Lawrence County Hosp., 601 So.2d 818, 822 (Miss.1992). Other remedies exist as well, namely discovery sanctions pursuant to Miss. R. Civ. P. 37, criminal penalties provided by Miss.Code Ann. § 97-9-55 (2000), contempt sanctions under Miss.Code Ann. § 9-1-17 (2000), and disciplinary sanctions imposed against attorneys who participate in spoliation. See Miss. R. Prof'l. Conduct 8.4.
¶ 9. Mississippi law recognizes that a chose in action constitutes personal property under Miss.Code Ann. § 1-3-41 (1998). In Garrett v. Gay, 394 So.2d 321, 322-23 (Miss.1981), we held that the right to sue for tort damages was personal property which could be contracted away. See also Estate of Waitzman, 507 So.2d 24, 26 (Miss.1987) (acknowledging that rights of action are property rights). Moore argues that because an individual's right to sue for damages is a property right, we should permit persons to be compensated for interference with these rights through an action in tort. It is our view that sufficient remedies exist for litigation-related misconduct such as spoliation of evidence and that the policy concerns espoused by our sister states which have rejected recognition *1128 of a separate tort counsel that this Court, likewise, refuse to recognize a separate tort for intentional spoliation of evidence.
¶ 10. In general, the tort of spoliation of evidence has not been widely adopted in other jurisdictions, nor has much agreement emerged on its contours and limitations. Amidst those jurisdictions that recognize an independent cause of action for spoliation, some recognize the tort of intentional spoliation, but not negligent spoliation, while some recognize both. See, e.g., Coleman v. Eddy Potash, Inc., 120 N.M. 645, 905 P.2d 185 (1995), overruled on other grounds, Delgado v. Phelps Dodge Chino, Inc., 131 N.M. 272, 34 P.3d 1148 (2001) (recognizing cause of action for intentional spoliation, but not negligent spoliation, against first and third parties); Smith v. Howard Johnson Co., 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993) (same). Also, some jurisdictions that permit an independent cause of action permit it only as against third-party spoliators, but not first-party spoliators. See, e.g., Smith v. Atkinson, 771 So.2d 429 (Ala. 2000) (recognizing cause of action for negligent spoliation against third party, but not against first party); Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11 (1999) (recognizing cause of action for negligent and intentional spoliation against third parties, but not against first parties).
¶ 11. It is necessary to here digress for a brief discussion regarding the distinction between first and third-party spoliators. Third-party spoliation is particularly problematic because not all of the litigation-related remedies for spoliation apply to third parties. The distinction between third and first party spoliators has proved crucial in many jurisdictions, underscored by the philosophical divide on third-party spoliation. See, e.g. Smith v. Atkinson, 771 So.2d 429 (Ala.2000); and Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11 (1999) (recognizing cause of action for third party spoliation only).
¶ 12. Inexplicably, the parties to this appeal make no distinction between first and third-party spoliators. Moore simply states in his brief to this Court that this case involves third party spoliators. McDowell merely states in his brief that he is a first-party spoliator because he was acting as an agent of Dowdle Gas. McDowell states that if this Court determines that spoliation should be recognized as an independent tort, it should limit the tort's application to third parties. This assertion, however, begs the question as to which party McDowell considers to be a third-party spoliator. If McDowell considers Reliance to be a third party spoliator, it would necessarily follow that McDowell is as well because it was Reliance who retained McDowell. Regardless, there is no caselaw supporting the assertion that a party's status as a first or third party spoliator depends upon principles of agency. Unfortunately, neither party cites authority or makes further argument as to how the distinction applies the case sub judice or how the distinction should affect our decision. The joint brief filed by Dowdle Gas and Reliance makes no distinction.
¶ 13. The case at bar involves both a first party spoliator, Dowdle Gas, and third party spoliators, Reliance and McDowell. A first party spoliator is a party to the underlying action who has destroyed or suppressed evidence relevant to the plaintiff's claims against that party. See Temple Cmty. Hosp. v. Superior Court, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223, 227 (1999). A third-party spoliator is oftentimes a stranger to the underlying litigation but, as seen in Temple, may be a party to the underlying *1129 litigation.[2] The third party spoliator is alleged to have destroyed evidence relevant to the plaintiff's causes of action against another defendant(s). Id. In other words, a third-party spoliator is "a party not alleged to have committed the underlying tort as to which the lost or destroyed evidence related." Smith v. Atkinson, 771 So.2d 429, 432 (Ala.2000). Moore states in his complaint that the propane tank and its appendages, had they not been spoliated, were relevant to show the cause of the explosion. Thus, the spoliated evidence was relevant to the claims asserted against Dowdle Gas, but not to those asserted against Reliance and McDowell. The issue, then, properly framed, before us is whether we will recognize intentional spoliation of evidence as an independent tort against both first and third-party spoliators.
¶ 14. Returning to the previous discussion, the tort of intentional spoliation of evidence has its origins in a 1984 opinion from the California Court of Appeals, Smith v. Superior Court, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984). The Smith court analogized intentional spoliation of evidence to the tort of intentional interference with prospective business advantage, and concluded that a prospective civil action in a products liability case is a probable expectancy entitled to legal protection. Id. at 837. Following Smith, California appellate courts recognized a cause of action for negligent spoliation of evidence in Velasco v. Commercial Building Maintenance Co., 169 Cal.App.3d 874, 215 Cal. Rptr. 504, 506 (1985), and Florida's appellate courts quickly followed in Bondu v. Gurvich, 473 So.2d 1307 (Fla.Dist.Ct.App. 1984) (recognizing cause of action for negligent spoliation of evidence).[3] Alaska, Ohio, Montana, and New Mexico have recognized intentional spoliation of evidence as a separate tort. Hazen v. Municipality of Anchorage, 718 P.2d 456, 463 (Alaska 1986); Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11 (1999); Coleman v. Eddy Potash, Inc., 120 N.M. 645, 905 P.2d 185 (1995); Smith v. Howard Johnson Co., 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993). Montana, however, recognizes intentional spoliation as a cause of action only where it is asserted against a third party spoliator, not a first party spoliator. Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11 (1999). New Jersey recognizes the tort of fraudulent concealment as a cause of action for intentional spoliation of evidence. Rosenblit v. Zimmerman, 166 N.J. 391, 766 A.2d 749, 757-58 (2001). Alaska, Ohio, New Jersey, and New Mexico have declined to extend their rulings to cover negligent spoliation of evidence. Sweet v. Sisters of Providence in Washington, 895 P.2d 484 (Alaska 1995); Hirsch v. Gen. Motors Corp., 266 N.J.Super. 222, 628 A.2d 1108 (Law Div.1993); Coleman v. Eddy Potash, Inc., 120 N.M. 645, 905 P.2d 185 (1995). Montana recognizes the separate tort for negligent spoliation, but, again, only against third parties, not against first parties. Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11 (1999). Additionally, the appellate *1130 courts of Indiana, District of Columbia, and the Court of Appeals have recognized negligent spoliation as a cause of action against third parties. Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C.Ct.App. 1998); Thompson v. Owensby, 704 N.E.2d 134 (Ind.Ct.App.1998).
¶ 15. Reasons given by the courts that have embraced the independent tort of negligent or intentional spoliation are as follows: (1) Permitting the independent tort action promotes the desire to protect testimonial candor and the integrity of the adversarial system. See Petrik v. Monarch Printing Corp., 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312, 1319 (1986).(2) The tort protects the probable expectation of a favorable judgment or defense in future litigation. See Hazen v. Municipality of Anchorage, 718 P.2d 456, 464 (Alaska 1986).(3) Often the traditional evidentiary remedies and sanctions are not effective enough or available to deter spoliation. See Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11, 17 (1999).
¶ 16. In 1998, the California courts, previously leading the crusade for spoliation as an independent tort, changed course when the California Supreme Court refused to recognize the tort of intentional spoliation against a first party spoliator in Cedars-Sinai Med. Ctr. v. Superior Court, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511 (1998). Shortly thereafter, in Temple Community Hospital v. Superior Court, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223 (1999), the California Supreme Court refused to recognize the tort of intentional spoliation against a third party. Here, Dowdle Gas and McDowell argue that we should find it instructive that California, the first and leading state to adopt spoliation as an independent tort, found application of the tort in practice unwieldy and no longer recognizes the tort in any context.
¶ 17. The California Supreme Court gave the following explanation for rejecting the tort of intentional spoliation against first parties:
The intentional destruction of evidence is a grave affront to the cause of justice and deserves our unqualified condemnation. There are, however, existing and effective nontort remedies for this problem. Moreover, a tort remedy would impose a number of undesirable social costs, as well as running counter to important policies against creating tort remedies for litigation-related misconduct.... No one doubts that the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both. That alone, however, is not enough to justify creating tort liability for such conduct. We must also determine whether a tort remedy for the intentional first party spoliation of evidence would ultimately create social benefits exceeding those created by existing remedies for such conduct, and outweighing any costs and burdens it would impose. Three concerns in particular stand out here: the conflict between a tort remedy for intentional first party spoliation and the policy against creating derivative tort remedies for litigation-related misconduct; the strength of existing nontort remedies for spoliation; and the uncertainty of the fact of harm in spoliation cases.
Cedars-Sinai Med. Ctr., 74 Cal.Rptr.2d 248, 954 P.2d at 512-15. The court, emphasizing the important interest of finality *1131 in adjudication, warned that "a spiral of lawsuits" would occur as disappointed litigants sought another "round of litigation." Id. at 515-16. The court compared spoliation to other forms of litigation-related misconduct, such as perjury, for which there is no tort remedy. Id. at 515. The court observed the strong policy favoring the use of nontort remedies, rather than derivative actions, namely the evidentiary inference, discovery sanctions, criminal penalties, civil monetary, contempt, and issue sanctions, and attorney disciplinary actions. Id. at 518.
¶ 18. The court also expressed concern over the uncertainty of the fact of harm which arises in spoliation cases. Id. The court explained:
[E]ven if the jury infers from the act of spoliation that the spoliated evidence was somehow unfavorable to the spoliator, there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor. Without knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation. One court considering the question has observed the following: "[I]t is impossible to know what the destroyed evidence would have shown.... It would seem to be sheer guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit.... The lost evidence may have concerned a relevant, but relatively trivial matter. If evidence would not have helped to establish plaintiff's case an award of damages for its destruction would work a windfall for the plaintiff."
Id. at 518-19 (quoting Petrik v. Monarch Printing Corp., 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312, 1320 (1986)). And, finally, the court observed the costs that a tort remedy would impose, namely the risk of erroneous determinations of spoliation liability (that is, findings of liability in cases in which the availability of the spoliated evidence would not have changed the outcome of the underlying litigation) and the cost of causing persons or entities to take extraordinary measures to preserve for an indefinite period things of no apparent value solely to avoid the possibility of spoliation liability as those things turn out, years later, to have some potential relevance to litigation. Id. at 519.
¶ 19. The California Supreme Court extended this holding to claims against third-party spoliators in Temple. The court noted that the considerations expressed in Cedars-Sinai applied with equal force in actions against third parties. Temple, 84 Cal.Rptr.2d 852, 976 P.2d at 227-30. The court did observe the chief complaint espoused by the courts which have recognized tort actions against third parties, stating:
We recognize that the salient distinction between first party and third party spoliation of evidence is the disparity in sanctions available within the confines of the underlying litigation. In the case of first party spoliation, these sanctions serve not only to deter spoliation of evidence, but may promote compensation for the underlying injury in spite of the absence of the spoliated evidence. The evidentiary inference ..., as well as most discovery sanctions, ranging from issue preclusion to dismissal, are not *1132 available when a person who is not a party to the litigation and who is not an agent of a party intentionally has destroyed evidence. The victim of third party spoliation, however, is not entirely helpless. Some discovery sanctions are available to punish third party spoliation, including monetary and contempt sanctions against persons who flout the discovery process by suppressing or destroying evidence. A criminal sanction remains available under Penal Code section 135, as are disciplinary sanctions against attorneys who may be involved in spoliation. As we have pointed out, the victim of third party spoliation may deflect the impact of the spoliation on his or her case by demonstrating why the spoliated evidence is missing. It also may be possible to establish a connection between the spoliator and a party to the litigation sufficient to invoke the sanctions applicable to spoliation by a party. We do not believe that the distinction between the sanctions available to victims of first party and third party spoliation should lead us to employ the burdensome and inaccurate instrument of derivative tort litigation in the case of third party spoliation. We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty. Criminal sanctions, of course, also remain available.
Temple, 84 Cal.Rptr.2d 852, 976 P.2d at 232 (citations omitted). The court also noted that in many instances, as in the case before us, the third party spoliator may not be a total stranger to the litigation, as there is little motivation to spoliate where the third party is wholly divorced from the litigation. Id. at 230. In such an instance, a negative inference may be drawn against the other defendant where the third party spoliator is acting at the behest of the other defendant, and the full panoply of discovery sanctions applies. Id. And, finally, the court noted that it would be anomalous to hold a third party liable in tort for conduct that would not give rise to tort liability if committed by a party. Id. This consideration was particularly cogent in Temple in which the same defendant was both a first and third party spoliator, as well as in the case at bar where both first and third parties are present in the underlying litigation. Id. It should also be observed that, in the case sub judice, all alleged spoliators are before the court and subject to its discretionary power in imposing sanctions for misconduct.
¶ 20. A number of other states have likewise rejected the spoliation tort, relying on the same rationale adopted by the California Supreme Court, or have declined to recognize it as a separate cause of action under the particular facts before the court, choosing, instead to rely exclusively on traditional remedies. Edwards v. Louisville Ladder Co., 796 F.Supp. 966 (W.D.La.1992) (interpreting Louisiana law, predicted that state courts would not recognize cause of action for intentional or negligent spoliation); La Raia v. Superior Court, 150 Ariz. 118, 722 P.2d 286 (1986) (plaintiff's action for personal injury within realm of existing tort law); Goff v. Harold Ives Trucking Co., 342 Ark. 143, 27 S.W.3d 387 (2000) (rejecting first-party intentional spoliation as an independent tort); Sharpnack v. Hoffinger Indus., Inc., 231 Ga.App. 829, 499 S.E.2d 363 (1998) (refusing to recognize separate tort on facts of the *1133 case); Meyn v. State, 594 N.W.2d 31 (Iowa 1999) (rejecting cause of action for negligent spoliation); Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177 (1987) (refusing to recognize separate tort for spoliation absent contract, agreement, voluntary assumption of duty or special relationship of the parties); Monsanto Co. v. Reed, 950 S.W.2d 811 (Ky.1997) (refusing to recognize either intentional spoliation or negligent spoliation); Miller v. Montgomery County, 64 Md.App. 202, 494 A.2d 761, 768 (Ct.Spec.App.) (refusing to recognize separate cause of action); Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434 (Minn. 1990) (refusing to recognize tort prior to resolution of underlying claim); Brown v. Hamid, 856 S.W.2d 51 (Mo.1993) (refusing to recognize tort of intentional spoliation); Elias v. Lancaster Gen. Hosp., 710 A.2d 65 (Pa.Super.Ct.1998) (refusing to recognize separate tort on facts of the case); Trevino v. Ortega, 969 S.W.2d 950 (Tex.1998) (refusing to recognize either intentional or negligent spoliation); Austin v. Consolidation Coal Co., 256 Va. 78, 501 S.E.2d 161 (1998) (refusing to recognize intentional or negligent spoliation as independent tort under the facts presented).

B.
¶ 21. Dowdle Gas and McDowell urge us to adopt the rationale of those courts which have refused to recognize a separate tort for intentional spoliation and argue that the existing remedies for spoliation under Mississippi law provide sufficient redress for spoliation. Again, Miss. Code Ann. § 97-9-55 provides for criminal sanctions for those who destroy evidence. This statute applies regardless of whether the spoliator is a first party spoliator or a third party spoliator. Spoliation is also addressed by Miss. R. Civ. P. 37, which allows the court to sanction a party for failure to make or cooperate in discovery. As all alleged spoliators are before the court in the case sub judice, they are subject to discovery sanctions. Also available are sanctions for contempt provided in Miss.Code Ann. § 9-1-17 and attorney disciplinary sanctions. See Miss. R. Prof'l Conduct 8.4. And, finally, the punishment frequently levied is the spoliation inference. Because the allegedly spoliated evidence was relevant only to the claim against Dowdle Gas, Dowdle Gas is, technically at least, the only party affected by the spoliation inference.
¶ 22. In addition to the concerns discussed previously, Dowdle Gas and McDowell name other policy reasons for declining to recognize a spoliation tort. First, they assert that Mississippi courts will experience difficulty in deciding when property owners are under a duty to maintain evidence, particularly in regard to third party spoliators. As the Supreme Court of Iowa observed in Meyn v. State, 594 N.W.2d 31, 34 (Iowa 1999), "it would be very difficult to define the limits of a duty imposed on a stranger to the litigation to preserve evidence." The California Supreme Court observed the enormous costs to society involved in individuals and entities undertaking unnecessary and expensive record-retention policies. Temple, 84 Cal.Rptr.2d 852, 976 P.2d at 228. According to one example given by the court in Temple, "[m]edical providers ... might feel constrained to retain contaminated surgical devices and by products of medical procedures out of fear of liability." Id. at 232.
¶ 23. Dowdle Gas and McDowell also express concern that the duty to preserve evidence would erode the rights of property owners. They argue that property owners will be forced to dispose of their property either in fear of liability or in ignorant bliss of their potential jeopardy. As an Illinois appellate court justice once observed, *1134 "[i]t could be a wrecked car, a severed body part, an item of clothing, a bandage, a dead cat. Who knows?" Graves v. Daley, 172 Ill.App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679, 682 (1988) (Heiple, J., dissenting).
¶ 24. Dowdle Gas and McDowell correctly assert that the tort of spoliation of evidence is available only to those who have seen their prospective economic advantage, reflected in a tort suit for some unrelated injustice, extinguished by a spoliating defendant. Therefore, the spoliation tort would be available only to dissatisfied plaintiffs and never to dissatisfied defendants. See Hirsch v. Gen. Motors Corp., 266 N.J.Super. 222, 628 A.2d 1108, 1119 (1993) ("protective function of spoliation tort is inapplicable where spoliation of evidence interferes with a defendant's ability to defend a lawsuit").
¶ 25. Additionally, Dowdle Gas and McDowell argue that a rule recognizing an independent tort for spoliation of evidence runs counter to the basic principle that there is no cognizable independent action for perjury in an existing lawsuit. They quote the California and Texas courts in analogizing perjury to spoliation. The Cedars-Sinai court stated:
Perjury, like spoliation, undermines the search for truth and fairness by creating a false picture of the evidence before the trier of fact. Perjury does so by creating false evidence; spoliation does so by destroying authentic evidence. Yet we have held that there is no civil remedy in damages against a witness who commits perjury when testifying.... These cases denying a tort remedy for the presentation of false evidence or the suppression of evidence rest on a concern for the finality of adjudication.... Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice. . . .
Cedars-Sinai, 74 Cal.Rptr.2d 248, 954 P.2d at 515-17. The Texas Supreme Court similarly stated:
Our refusal to recognize spoliation as an independent tort is buttressed by an analogous line of cases refusing to recognize a separate cause of action for perjury or embracery. Like evidence spoliation, civil perjury and civil embracery [attempting to influence a jury corruptly] involve improper conduct by a party or a witness within the context of an underlying lawsuit. A number of courts considering the issue have refused to allow the wronged party to bring a separate cause of action for either perjury or embracery.
Trevino v. Ortega, 969 S.W.2d at 953.
¶ 26. Moore argues that spoliation is unlike perjury in that when a witness commits perjury, the opposing attorney has the opportunity to impeach the witness. The California Supreme Court in Temple acknowledged this distinction, yet continued to hold to the interest in preventing "the greater harm of subjecting parties, witnesses, and the courts to unending litigation over the conduct and outcome of a lawsuit." Temple, 84 Cal.Rptr.2d 852, 976 P.2d at 230.
¶ 27. Moore also argues that Mississippi recognizes torts similar to spoliation, namely malicious prosecution, a form of litigation-related misconduct, and malicious interference with business relations. The Smith court analogized a plaintiff's probable expectancy of recovery to the economic interest protected by the tort of intentional interference with prospective economic relations. Smith, 198 Cal.Rptr. at 836. However, this analogy is specious. "Calling the plaintiff's interest a `probable expectancy' instead of a `lost lawsuit' does not create actual harmeither way the *1135 trier of fact has no way of determining if the spoliation has truly injured anyone." Jonathan Judge, Comment, Reconsidering Spoliation: Common-Sense Alternatives to the Spoliation Tort, 2001 Wis. L.Rev. 441, 455 (2001). Furthermore, "a prospective economic relationship is quantifiable in a manner which a general litigation interest can almost never be" as the business background of the transaction usually allows injury and damages to be determined with at least reasonable certainty. Id.

C.
¶ 28. We refuse to recognize a separate tort for intentional spoliation of evidence against both first and third party spoliators. We find persuasive the opinions of the California Supreme Court in Cedars-Sinai and Temple. Obviously, the preservation of items which might be relevant evidence in litigation is desirable. Nevertheless, the foundation of an inquiry into whether to create a tort remedy for intentional spoliation of evidence must be based on the recognition that "using tort law to correct misconduct arising during litigation raises policy considerations not present in deciding whether to create tort remedies for harms arising in other contexts." Cedars-Sinai, 74 Cal.Rptr.2d 248, 954 P.2d at 515.
¶ 29. Chief among these concerns is the important interest of finality in adjudication. We should not adopt a remedy that itself encourages a spiral of lawsuits, particularly where sufficient remedies, short of creating a new cause of action, exist for a plaintiff. Closely akin to the interest in finality of litigation is the concern espoused by the Texas Supreme Court in Trevino v. Ortega, 969 S.W.2d 950, 952 (Tex.1998):
While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system. We are especially averse to creating a tort that would only lead to duplicative litigation, encouraging inefficient relitigation of issues better handled within the context of the core cause of action. We thus decline to recognize evidence spoliation as an independent tort.
¶ 30. Furthermore, weighing against recognition of the tort is the uncertainty of the fact of harm. As the Arkansas Supreme Court stated in Goff v. Harold Ives Trucking Co., 342 Ark. 143, 27 S.W.3d 387 (2000), "the question goes not only to the amount of damages caused by the destruction of evidence, but also to the very existence of injury." Id. at 390. And, finally, the costs to defendants and courts would be enormous, particularly from the risks of erroneous determinations of liability due to the uncertainty of the harm and from the extraordinary measures required to preserve for indefinite periods items for the purpose of avoiding potential spoliation liability in future litigation. Nontort remedies for spoliation are sufficient in the vast majority of cases, and certainly, as the California courts learned after 14 years of experience with this tort, any benefits obtained by recognizing the spoliation tort are outweighed by the burdens imposed.

II. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ALLOWING MOORE TO AMEND HIS COMPLAINT TO ADD RELIANCE AS A DEFENDANT.
¶ 31. Reliance has previously been dismissed from this appeal. Therefore, we need not address this issue. However, the following discussion is included for completeness.
¶ 32. Dowdle argues that the circuit court abused its discretion by allowing *1136 Moore to amend his complaint to add Reliance as a defendant. It contends that the circuit court's ruling violates this Court's prior holdings regarding the impropriety of allowing the jury to infer that the plaintiff's verdict will be paid by an insurer and not by the plaintiff. For this assertion, Dowdle and Reliance rely on Ivy v. General Motors Acceptance Corp., 612 So.2d 1108 (Miss.1992); Anchor Coatings, Inc. v. Marine Indus. Residential Insulation, Inc., 490 So.2d 1210 (Miss.1986); West Cash & Carry Building Materials of McComb, Inc. v. Palumbo, 371 So.2d 873 (Miss.1979). These cases are distinguishable from the matter at bar. In each case, the plaintiff sued a defendant who was insured. Comments were made during the course of the trial regarding the fact that the defendant was insured, and this Court, in each case, held that the comments did not rise to the level of reversible error. Ivy, 612 So.2d at 1113; Anchor Coatings, 490 So.2d at 1219; Palumbo, 371 So.2d at 876.
¶ 33. While it is true that we discourage references to the fact that a judgment will be paid by an insurer rather than the defendant, we do not bar claims based on the misconduct of the insurance company itself. In the case sub judice, Moore is suing Reliance for tort causes of action, not reasons regarding any liability policies owned by Dowdle Gas. The decisions of this Court in no way prevent such an action. See, e.g., Aetna Cas. & Sur. Co. v. Berry, 669 So.2d 56 (Miss.1996) (widow brought suit against husband's insurance company for conversion, fraud and negligent procurement of claims). Of course, the decisions of this Court prohibit the suggestion before the jury, upon remand, that the insurance would cover in whole or in part any judgment awarded Moore. The trial court did not abuse its discretion in allowing Moore to amend his complaint to state claims for trespass, conversion of chattels, and fraud against Reliance.

III. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ALLOWING MOORE TO AMEND HIS COMPLAINT TO ADD MCDOWELL AS A DEFENDANT.
¶ 34. Dowdle and Reliance argue that by allowing Moore to state a claim against McDowell, the trial court has effectively stripped Dowdle of expert testimony. They argue that because McDowell is now a party defendant, adverse to Moore, no jury will view McDowell's testimony as unbiased and scientific. Dowdle and Reliance fail to cite any supporting authority for their position. We have long held that an argument unsupported by cited authority need not be considered by the Court. See Hankins v. Hankins, 729 So.2d 1283, 1286 (Miss.1999); Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997); Grey v. Grey, 638 So.2d 488, 491 (Miss. 1994). Consideration of this issue is procedurally barred. Holland v. State, 705 So.2d 307, 329 (Miss.1997).

CONCLUSION
¶ 35. We refuse to recognize an independent cause of action for intentional spoliation of evidence against first and third party spoliators. To the extent that Moore's amended complaint asserts causes of action for spoliation against all three defendants, the circuit court's order granting leave to amend is reversed. However, the circuit court did not abuse its discretion in allowing Moore to bring the remaining claims against Reliance and McDowell. Therefore, to the extent the court's order granting leave to amend allows Moore to asserts such other claims, the order is affirmed. This matter is remanded *1137 for further proceedings consistent with our opinion.
¶ 36. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR.
McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
DIAZ AND EASLEY, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.
PITTMAN, C.J., NOT PARTICIPATING.
NOTES
[1] Sine qua non is not itself a cause of action, but, rather, appears to be stated in the complaint as a means of proving negligence by Dowdle Gas.
[2] In Temple, the defendant hospital was the only defendant against whom a spoliation claim was asserted. The court recognized that the plaintiff's spoliation claim was a hybrid. Temple, 84 Cal.Rptr.2d 852, 976 P.2d at 227. To the extent the spoliation claim was based upon the allegation that the hospital intentionally destroyed evidence relevant to the plaintiff's claims against the hospital, the claim was a first party spoliation claim. Id. To the extent the spoliation claim was based upon the allegation that the hospital destroyed evidence relevant to the plaintiff's causes of action against other defendants, her claim was a third party spoliation claim. Id.
[3] The Supreme Court of Florida has yet to address this issue.