# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00259-COA

| | |
|---|---|
| **MARCI SKLAR TEAL** | **APPELLANT** |

**v.**

| | |
|---|---|
| **ELAINE JONES** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2014 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHUCK MCRAE |
| | GALE NELSON WALKER |
| | SETH CLAYTON LITTLE |
| | CHRISTOPHER ANTHONY BAMBACH |
| ATTORNEYS FOR APPELLEE: | MICHAEL JAMES MALOUF JR. |
| | LYNEILLE COUNTISS WILLIAMS |
| | WILLIAM EDWARD BALLARD |
| | JAMES MATTHEW LENDERMAN |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S MOTION FOR NEW TRIAL, JUDGMENT NOTWITHSTANDING THE VERDICT, AND ADDITUR |
| DISPOSITION: | REVERSED AND REMANDED - 01/03/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     John Teal and Marci Sklar Teal were married on December 26, 2005. The couple divorced on June 2, 2008, on the ground of irreconcilable differences. After their divorce, Marci learned that John had a romantic relationship with Elaine Jones (Lainey) during their marriage. As a result, she filed a complaint for alienation of affections against Lainey in the

Circuit Court of Warren County. At the close of trial, the jury found in favor of Marci on her claim for alienation of affections but awarded her no damages. Thereafter, Marci filed a motion for a new trial, judgment notwithstanding the verdict (JNOV), and additur, which the circuit court denied.

¶2. On appeal, Marci argues that the trial court erred by instructing the jury that she had destroyed evidence and that the jury should presume that the missing evidence was unfavorable to her. She also challenges a series of evidentiary rulings concerning post-separation and post-divorce events and her subsequent bankruptcy. We find no abuse of discretion in the trial court's decisions to admit or exclude evidence, but we hold that the spoliation instruction was erroneous and that a new trial is required. Accordingly, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

¶3. John met Marci in 2001. Marci was working as a bartender at the Cypress Cove Marina in Venice, Louisiana, and John was the captain of a charter fishing boat. They began dating and eventually lived together. Marci had a son, Hunter, from a previous marriage. Hunter was three years old when Marci and John began dating.

¶4. In 2004, John, Marci, and Hunter moved to Texas for John to captain Dan Murphy's fishing yacht. As the captain of Murphy's yacht, John spent most of the year traveling to various fishing tournaments in places such as Bermuda and the Bahamas. As a result, John was home only three or four months out of the year. John and Marci married on December 26, 2005. After they married, John, Marci, and Hunter moved to Rolling Fork, Mississippi,

2

and John continued to captain Murphy's yacht. In January 2007, John and Marci purchased the Onward Store, a historic country store in Rolling Fork. Marci operated the store, and John assisted when he was home.

¶5. In April 2006, John met Lainey at a fishing tournament in the Bahamas. The next day, John, speaking in Italian, told Lainey that he had fallen in love with her at first sight. Lainey testified that John "chased" her as they continued to see each other at fishing tournaments, while John testified that Lainey pursued him. In any event, Lainey knew that John was married, but she admitted that the two became romantically involved in July 2006 and that their relationship continued until 2009.

¶6. In mid-2007, Marci "felt something was off" in her marriage and accused John of having an affair, but John denied that he was having an affair and made her think that she was "crazy" for even suggesting the idea. Marci began seeing a psychiatrist in the latter part of 2007, at least in part because of her concerns about her marriage.

¶7. On January 14, 2008, John was on a hunting trip with Lainey and others when Marci called him because she needed to discuss issues related to the Onward Store. The two argued, and John told her that he did not love her and wanted a divorce. John did not return home after the conversation. John and Marci filed for an irreconcilable differences divorce on or about April 1, 2008, and a final judgment of divorce was entered on June 2, 2008. As part of their property settlement agreement, John agreed to pay Marci $25,000. Lainey ultimately provided John with $25,000 so that he could make the payment.

¶8. After John asked for a divorce, Marci began dating and communicating with other men via Facebook, email, phone, and text messages. Days before her divorce was final,

3

Marci went on her first date with Gene Barnett. Gene and Marci continued to date after her divorce was final.

¶9.     On May 27, 2008, Lainey purchased approximately 200 acres of property near Edwards, Mississippi. Lainey and John referred to the property as "Wildwood." Lainey purchased the property "for John to be closer to Hunter and also as a hurricane hiding hole for [her] and [her] friends and family." According to Lainey, she and John first discussed buying land together when John visited her in Kiln, Mississippi, in early 2008. During the trip, Lainey told John that she did not "need a piece of paper to be married," but John insisted that he would "make an honest woman out of" her.

¶10.    Beginning in September 2008, John and Marci reconciled for a few months, although, unbeknownst to Marci, John was also still in a relationship with Lainey. During their reconciliation, Marci discovered that John had a romantic relationship with Lainey while they were married. Marci testified that in the spring of 2009, John left his email account open on her computer at the Onward Store, and she found emails that made clear that he had been having an affair with Lainey. After she learned of the affair, Marci ended her reconciliation with John.[1]  On June 9, 2010, Marci filed a complaint against Lainey in circuit court for alienation of affections.

¶11.    On September 2, 2011, Marci filed for chapter 7 bankruptcy. As part of her bankruptcy filings, Marci listed her complaint against Lainey in her Statement of Financial Affairs, but she did not list the claim as an asset in her Summary of Schedules. As a result,

---

[1] Lainey testified that her relationship with John ended around March 2009 and that the last time she saw him was at a fishing tournament in Bermuda in July 2009.

4

the bankruptcy was administered as a "no asset" case, and an order discharging Marci's debts and closing her bankruptcy was entered on December 21, 2011.

¶12.    On September 19, 2012, the bankruptcy trustee filed a motion to reopen Marci's bankruptcy to pursue the complaint as an asset of her estate.   The bankruptcy court subsequently reopened the case and entered an order approving the employment of Marci's attorney, Chuck McRae, as special counsel for the trustee.

¶13.    On August 22, 2012, Lainey's attorney sent Marci and her attorney a letter regarding her obligation to preserve electronically-stored evidence.  On December 10, 2012, Lainey requested that Marci "produce for inspection any and all computers, in [Marci's] possession[,] custody or control, that [Marci] used to communicate electronically with John . . . from the date of [their] marriage to the present."  At Marci's deposition on February 27, 2013, she testified that she regularly deleted emails from John (and others) throughout the course of her marriage, so she was no longer in possession of any emails that they exchanged during their marriage.  She also testified that she had thrown away her personal laptop a year and a half earlier because it was ruined after coffee was spilled on it.  Finally, Marci testified that the desktop computer that she had used at work at the Onward Store was in storage.  Her former boyfriend, Gene Barnett, had rented a storage unit for the store's equipment after the store closed.

¶14.    On March 4, 2013, Lainey filed a motion to compel production of Marci's computers. On April 2, 2013, the court held a hearing on Lainey's motion, at which time the parties' attorneys revealed that they had learned that Barnett had sold the desktop computer at some point in 2012.  Lainey's counsel stated that he needed to inspect the computer because it was

5

his "understanding that as long as the e-mail has been viewed on a particular computer screen at some point in time, then there is a forensic software program that you run on the computer and it is a high probability that you can pull it off and get a copy of it." At the conclusion of the hearing, the court ordered Marci to produce all emails between her and John and any computers in her possession or control or, alternatively, provide a detailed explanation as to why the same could not be produced. The court reserved ruling on Lainey's request that the jury be instructed on spoliation at trial.

¶15. On April 17, 2013, Marci filed a memorandum with the court explaining that Barnett took possession of equipment from the Onward Store, including the desktop computer that she used, after the store went out of business. Barnett placed the computer and other equipment in a storage unit and advertised it for sale on Craigslist, beginning on July 15, 2012. By the end of July, Barnett had sold the computer for $300. Marci's memorandum noted that the sale occurred before Lainey's counsel requested access to the computer. The memorandum also stated that Marci's attorney had contacted Marci's email provider (MSN) in an attempt to retrieve any emails between Marci and John, but MSN advised that it retained deleted emails for only sixty days. On November 20, 2013, the court entered an order in which it continued to reserve a ruling on a jury instruction on spoliation.

¶16. The case proceeded to a two-day trial in September 2014. During the jury instruction conference, Lainey offered proposed instruction 13-A on spoliation. The proposed instruction stated:

> The Court instructs the jury that the Plaintiff has destroyed evidence in this case. The Plaintiff has destroyed emails between herself and John Teal. The Plaintiff has also destroyed her computer while this lawsuit was pending.

Therefore, a presumption is now raised that the emails and the computer contained evidence that would have been unfavorable to the Plaintiff. This presumption of unfavorability is not solely confined to the destroyed emails and computer. You are free to draw a general negative inference against the Plaintiff because of her act of destroying evidence.

¶17. Marci objected to the instruction, arguing that there was no evidence of spoliation. The court ruled that the jury should be instructed on spoliation, but the court struck the final two sentences of the proposed instruction and gave the instruction as modified.

¶18. The jury returned a verdict finding in favor of Marci on her claim for alienation of affections. However, the jury awarded Marci $0 in damages. A final judgment was entered on the verdict on September 15, 2014. Marci then filed a timely motion for a new trial, JNOV, and additur. The court subsequently denied Marci's motion, and she appealed.

**DISCUSSION**

¶19. On appeal, Marci raises six issues, which we reorder and renumber as follows: (1) whether the circuit court erred by giving proposed jury instruction 13-A on spoliation; (2) whether the circuit court erred by excluding evidence related to John's relationship with Lainey after his divorce from Marci; (3) whether the circuit court erred by admitting evidence of Marci's relationships with other men between the date of her separation from John and the date of their divorce; (4) whether the circuit court erred by admitting evidence of her brief, post-divorce reconciliation with John; (5) whether the circuit court erred by excluding evidence pertaining to her bankruptcy; and (6) whether the circuit court erred by denying her motion for additur. We conclude that the circuit court erred by granting the instruction on spoliation and that Marci is entitled to a new trial on this ground. We also address Marci's evidentiary arguments because the same issues would likely arise again in a new trial. *See*

7

*Newell v. State*, 175 So. 3d 1260, 1268 (¶5) (Miss. 2015) (holding that an appellate court should address evidentiary issues that are "likely to arise once again on remand" (quoting *Brooks v. State*, 763 So. 2d 859, 864 (¶15) (Miss. 2000))). We conclude that the circuit court committed no abuse of discretion in its rulings on those issues.

## I. Spoliation Instruction

¶20. Lainey first argues that Marci is procedurally barred from challenging the spoliation instruction because it does not appear in the record on appeal, either as offered by Lainey or as modified by the court. Marci concedes that the instruction itself is not in the record on appeal, and the court's instructions to the jury were not transcribed. However, Marci quoted the proposed instruction in her post-trial motion for a new trial, JNOV, and additur, which is part of the record on appeal. And in response to Marci's motion, Lainey did not suggest that Marci had misquoted the proposed instruction. Marci's post-trial motion indicates that the proposed instruction is in the circuit court record at "Docket No. 128." For reasons that are not apparent, Docket No. 128 was omitted from the record on appeal,[2] but it is publicly available via the Mississippi Electronic Courts (MEC) case management system, and it shows that Marci has accurately quoted the proposed instruction.

¶21. It was Marci's obligation to examine the record and certify that it was correct and complete. *See Miller v. R.B. Wall Oil Co.*, 970 So. 2d 127, 130-31 (¶¶9-11) (Miss. 2007). Therefore, we would be within our discretion to decline to review this issue based on her failure to notice that the instruction was missing and request its inclusion in the record on

---

[2] *See* M.R.A.P. 10(d)(1)(i) ("All jury instructions shall be placed in the record[.]").

8

appeal. *See id.* However, it is also within our discretion to proceed with a review of the issue, *see id.*, and we conclude that it is appropriate to do so in this case. The content of the proposed instruction is readily available via MEC and cannot reasonably be disputed. *Cf., e.g.*, *Brown v. Lippard*, 350 F. App'x 879, 883 (5th Cir. 2009) (holding that an appellate court may consider a prior trial transcript in the district court record in a related case, although it was not included in the record on appeal); *Jacques v. U.S. R.R. Ret. Bd.*, 736 F.2d 34, 40 (2d Cir. 1984) (holding that an appellate court may take judicial notice of "a pleading and official court record of an inferior court in [the appellate court's] jurisdiction in a [related] case"). In addition, the trial court's modifications to the instruction are clear from the transcript. Accordingly, we will address the issue on the merits.

¶22.    Our standard of review regarding jury instructions is as follows:

> On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Defects in specific instructions do not require reversal where all instructions taken as a whole fairly—although not perfectly—announce the applicable primary rules of law. However, if those instructions do not fairly or adequately instruct the jury, we can and will reverse.

*Mitchell v. Barnes*, 96 So. 3d 771, 775 (¶9) (Miss. Ct. App. 2012) (quotation marks omitted) (quoting *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993)). "When analyzing the grant or refusal of a jury instruction, two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?" *Beverly Enters. Inc. v. Reed*, 961 So. 2d 40, 43 (¶8) (Miss. 2007).

¶23.    Marci argues that the trial court erred by instructing the jury on spoliation because there was no evidence that she destroyed evidence. In *DeLaughter v. Lawrence County*

*Hospital*, 601 So. 2d 818 (Miss. 1992), which involved a hospital's loss of patient records in a medical malpractice/wrongful death case, the Mississippi Supreme Court discussed how the issue of spoliation should be handled at trial. The Court's treatment of the issue is instructive, so we set it out in some length:

> This issue concerns what the jury was entitled to hear and what instruction should have been given regarding the reconstructed medical records. The jury was entitled to be told the original hospital record would not be produced in court, as that was a relevant fact. The hospital had the duty to give an adequate explanation for the absence of the original hospital record. Therefore, the jury was entitled to be told *why* the original hospital record was missing, also a relevant fact.

> As with any other evidence, the explanation for the original record's absence may be fully satisfying either that it was lost through no fault of the hospital, that the hospital deliberately destroyed it, or as in most cases, somewhere in between, thereby making it a jury issue. For example, where the evidence is positive that the hospital had been destroyed by fire, such circumstance would adequately account for the loss of the original medical record without fault attributable to the hospital, and there would be no reason for the jury to be instructed on a presumption or inference arising from the loss.

> On the other hand, where the evidence is positive that the hospital deliberately destroyed the original medical record or where a record required by law to be kept is unavailable due to negligence, an inference arises that the record contained information unfavorable to the hospital, and the jury should be so instructed. . . . Likewise, where the evidence is somewhere in between such that the jury could find that the hospital either had or had not deliberately or negligently destroyed the original medical record, the jury should be instructed to take this into account.

> Thus, where the evidence regarding the missing original medical records is such that the jury is entitled to an instruction, the instruction should require the jury to first determine whether reasonable explanation for the loss of the missing original medical record has been presented by the hospital. Should the jury determine from the explanation provided that the loss of the original medical record was not in any way attributable to the deliberate or negligent actions of the hospital, the jury could not infer that the missing original medical record contained information unfavorable to the hospital.

10

However, should the jury determine from the explanation provided that the loss of the original medical record was deliberately or negligently brought about by the actions of the hospital, the jury could infer that the missing original medical record contained information unfavorable to the hospital.

*Id.* at 821-22.

¶24.	In the present case, the only evidence of the alleged spoliation that was presented to the jury was the following testimony by Marci on cross-examination:

> Q.	Okay. And we had asked for [emails between you and John], and you said they were on your computer; is that correct?
>
> A.	I guess. If you say I said it.
>
> Q.	And you said that you could get them, that your friend Gene Barnett had put them in storage for you?
>
> A.	. . . [D]uring my deposition, you asked me about a computer [from the Onward Store] . . . . And I said . . . that Gene Barnett had that computer because [he placed] all of my stuff in storage when I closed the store. He had a storage unit for me, and that's where I was keeping all my stuff.
>
> Q.	Okay. And when we asked you to produce the computer, you said you would produce it, didn't you?
>
> A.	I would try to . . . .
>
> Q.	And then when we finally asked you to produce it, you said . . . Gene Barnett, your friend, had sold your computer, disposed of it without your knowledge?
>
> A.	. . . I don't know if I told y'all that, but I do know that he sold it. To whom, I don't know, or where or when or whatever. But . . . whatever was left in the storage unit, I told him he could keep the money or whatever it was, just dispose of it so it paid him back for him renting the storage unit for me.
>
> Q.	Okay. But he never gave you any money for the sale of that computer?
>
> A.	I told him to keep the money . . . for the payment of the storage unit.

11

Q. Okay. But you agree with me that there's no computer, there's no way we're going to get your e-mails off of it; isn't that true?

A. I guess not.

. . . .

Q. Now there were some e-mails earlier between you and John Teal that you deleted from the computer, is that --

A. . . . I delete all my emails I get from anybody, my grandparents, my mother, my brother. I don't feel no need to keep any e-mails unless there's something important in it.

Q. But those can be retrieved from a hard drive if you've got the computer; can they not?

A. If you have the computer, I'm assuming yes.

¶25. Thus, the jury heard testimony that Marci had deleted "some e-mails earlier between [her] and John," as it was her routine practice to delete emails once she had read them. The jury also heard that Marci's work computer had been sold at some point. However, the jury was presented with no evidence as to *when* the emails were deleted or the computer was sold.

¶26. Nonetheless, the jury was instructed as follows:

The Court instructs the jury that the Plaintiff has destroyed evidence in this case. The Plaintiff has destroyed emails between herself and John Teal. The Plaintiff has also destroyed her computer while this lawsuit was pending. Therefore, a presumption is now raised that the emails and the computer contained evidence that would have been unfavorable to the Plaintiff.

¶27. Marci argues that the evidence did not support this instruction. It is elementary that a jury instruction is "to be granted only where evidence has been presented which supports the instruction." *DeLaughter*, 601 So. 2d at 824. We agree with Marci that the evidence presented at trial was insufficient to show that she had deliberately or negligently destroyed

12

emails or her computer at a time when she knew or should have known that they might contain evidence relevant to this case. Marci's deletion of emails while she and John were married cannot support a spoliation instruction because the evidence was undisputed that she was unaware of John's affair with Lainey at that time. Therefore, the second sentence of the instruction should not have been given. As to the third sentence, no evidence was presented at trial that Marci "destroyed her computer." If this refers to the personal laptop that she threw away after coffee was spilled on it, there was simply no mention of the incident at trial. If this refers to the desktop computer from the Onward Store, then it misstates the evidence, which was that Barnett sold the computer, not that Marci "destroyed" it. Furthermore, there was no evidence presented at trial as to when the computer was sold.

¶28. As discussed above, pretrial proceedings in the case provide some additional detail on the issue. However, evidence that was not presented to the jury cannot provide a basis for such an instruction. As the *DeLaughter* Court explained, "where the evidence regarding the missing [evidence] is such that the jury is entitled to an instruction, the instruction should require *the jury* to first determine whether reasonable explanation for the loss of the missing [evidence] has been presented." *Id.* at 822 (emphasis added); *see also, e.g.*, *Brennan v. Webb*, 729 So. 2d 244, 250 (¶22) (Miss. Ct. App. 1998) ("When the evidence at trial does not support an offered jury instruction, the instruction is improper and should not be granted."). Therefore, evidence or argument from a pretrial hearing is not a basis for a spoliation instruction. Rather, sufficient evidence of the circumstances of the missing evidence must be presented at trial so that the jury may decide the significance of its absence.

¶29. Furthermore, the "spoliation inference" "entitles the non-offending party to an

13

instruction that the jury *may* infer that the spoliated evidence is unfavorable to the offending party." *Dowdle Butane Gas Co. v. Moore*, 831 So. 2d 1124, 1127 (¶8) (Miss. 2002) (emphasis added) (citing *DeLaughter*, 601 So. 2d at 822). That is, the jury must be instructed that it is permitted—but not required—to draw that inference, depending on its assessment of the circumstances of the loss of the evidence. The instruction given in this case failed to instruct the jury of its role in deciding whether to draw the permitted inference.[3]

¶30. To summarize, we hold that the instruction given at trial was improper because Marci's deletion of emails before she discovered John's affair with Lainey cannot amount to spoliation; because no evidence was presented at trial that she "destroyed" a computer; because the instruction was, in effect, a peremptory instruction—based on evidence never presented to the jury—that Marci spoliated evidence; and because the instruction required the jury to presume that the evidence was unfavorable, rather than simply permitting that

---

[3] In emphasizing the jury's role in evaluating alleged spoliation, we also emphasize that the importance of the missing evidence in this case is far less clear than in prior Mississippi Supreme Court cases addressing the issue of spoliation. For example, in *DeLaughter*, after a patient's death, the hospital lost the patient's hospital record—an obvious and "integral component in any malpractice action," which the hospital was required by law to maintain. *DeLaughter*, 601 So. 2d at 821. And in *Thomas v. Isle of Capri Casino*, 781 So. 2d 125 (Miss. 2001), a casino failed to preserve a computer central processing unit that "would have provided conclusive evidence whether [a patron] actually won [a disputed multi-million-dollar slot] jackpot." *Id.* at 129 (¶17). Indeed, the casino permitted the relevant data to be overwritten while the case was pending before the Mississippi Gaming Commission. *See id.* at 126-27 (¶2). Here, in contrast, the evidence in question consists of two computers that may or may not have contained emails between John and Marci. Lainey asserts that "presumably these emails would shed light on the true state of John and Marci's marriage," which Lainey argues "was not as perfect as Marci would have the jury believe." However, it does not appear that Marci claimed that her marriage was "perfect," and the jury heard ample evidence that it was not, even without the deleted emails.

14

inference. Further, we do not believe that the instruction can be deemed harmless. As the Texas Supreme Court has recognized, an improper "spoliation instruction is particularly likely to cause harm" because "its very purpose is to 'nudge' or 'tilt' the jury." *Wal-Mart Stores Inc. v. Johnson*, 106 S.W.3d 718, 724 (Tex. 2003). It was prejudicial to Marci for the jurors to be instructed that she had "destroyed evidence" and that they should presume that such evidence "would have been unfavorable" to her. Given the limited evidence actually presented on this issue at trial, the extent and seriousness of Marci's alleged wrongdoing was largely left to the jury's imagination. The instruction could have contributed to the jury's decision not to award Marci damages, despite finding that Lainey intentionally alienated John's affections. Under the circumstances, we cannot deem the error harmless.

¶31. Because the issue may arise again in a new trial, we comment briefly on the evidence presented and arguments made during pretrial proceedings. As discussed above, Marci's deletion of the emails before she was aware of John's affair was not spoliation of evidence because at that time she had no reason to anticipate a lawsuit, much less that Lainey might seek to discover the emails as evidence. Thus, the subsequent disposal of Marci's laptop or sale of her desktop might be spoliation of *evidence* only if there is reason to believe that the deleted emails still existed on the computers' hard drives when they left Marci's possession or control. Prior to trial, Lainey's counsel stated that it was his "understanding that as long as the e-mail has been viewed on a particular computer screen at some point in time, then there is a forensic software program that you run on the computer and it is a high probability that you can pull it off and get a copy of it." However, something more than counsel's understanding is necessary to establish that emails from a web-based email account feasibly

15

can be recovered from a computer's hard drive years after they were deleted. This is not a matter of common knowledge that can be assumed. If on remand Lainey presents evidence that such emails could have been recovered and evidence of the timing of Marci's disposal of her computers, then it would be within the discretion of the circuit court to grant her an instruction on spoliation. However, any instruction should be limited to the disposal of the computers (not the deletion of the emails); "the instruction should require the jury to first determine whether reasonable explanation for the loss of the [computers] has been presented" (*DeLaughter*, 601 So. 2d at 822); and the instruction should state "that the jury *may* infer that the spoliated evidence is unfavorable to [Marci]." *Dowdle Butane Gas Co.*, 831 So. 2d at 1127 (¶8) (emphasis added).

## II. Evidentiary Rulings

¶32. "The standard of review regarding admission or exclusion of evidence is abuse of discretion." *Whitten v. Cox*, 799 So. 2d 1, 13 (¶27) (Miss. 2000) (brackets omitted) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999)). For the reasons that follow, we conclude that the circuit judge did not abuse his discretion by (a) excluding evidence related to John's continued relationship with Lainey after his divorce from Marci; (b) admitting evidence of Marci's post-separation/pre-divorce relationships with other men; (c) admitting evidence of Marci's reconciliation with John; or (d) excluding evidence related to Marci's bankruptcy.

### A. John's Post-Divorce Relationship with Lainey

¶33. Marci argues that the trial court abused its discretion by granting Lainey's pretrial motion in limine (1) to exclude emails sent between Lainey and John after the date of John

and Marci's divorce and (2) to exclude evidence of expenses that Lainey paid for John after the same date.[4]  Marci argues that this ruling was "inconsistent" with the court's rulings admitting evidence of her own post-separation relationships with other men and her post-divorce reconciliation with John.  We will address those rulings separately below, but we find no abuse of discretion in the court's exclusion of evidence regarding John's post-divorce relationship with Lainey.  Marci does not dispute that she and John were finally divorced and his affections had been alienated by that point.  Lainey's continued relationship with John at that point was neither tortious nor relevant.

### B. Marci's Post-Separation/Pre-Divorce Communications and Relationships with Other Men

¶34.  Marci next argues that the trial court abused its discretion by denying her motion in limine to exclude evidence of her communications and relationships with other men after her separation from John in January 2008 but prior to their divorce on June 2, 2008.  At trial, Lainey presented evidence that Marci spent significant periods of time talking to and texting with other men between March and June 2, 2008.  Marci admitted to dating, kissing, and even spending the night with some of these men, although she denied having a sexual relationship with any of them prior to the date that her divorce became final; she also testified that some of the men were just friends of hers.  Marci contends that such evidence was irrelevant and unfairly prejudicial.  Lainey, however, argued that it was relevant to show that Marci was ready to move on from the marriage and to rebut Marci's claim that she was

---

[4] The court's order noted that some of the emails might be admissible at trial for purposes of impeachment.

17

distraught and distressed over the impending divorce. The trial court did not abuse its discretion by admitting evidence of Marci's pre-divorce conduct. *See Fitch v. Valentine*, 959 So. 2d 1012, 1022 (¶25) (Miss. 2007) ("The key time frame for the tort of alienation of affections is that of the marriage . . . .").

### C. Marci's Post-Divorce Reconciliation with John

¶35. Marci next argues that the trial court should have excluded evidence of her post-divorce reconciliation with John. The trial court did not abuse its discretion by allowing limited testimony regarding the brief reconciliation. At least some testimony on the subject was necessary to explain how Marci became aware of John's affair with Lainey. Further, Lainey was entitled to cross-examine John about the fact that he continued to lie to and have relationships with both women during the reconciliation, which was relevant to his credibility. Lainey was also entitled to cross-examine Marci about how she came into possession of emails between Lainey and John. Marci testified that she discovered the emails during her post-divorce reconciliation with John, but the emails were actually forwarded to her from John's email account in January 2010, several months after the reconciliation ended. Marci testified that she "hacked" into John's account and forwarded the emails to herself, but Lainey's counsel argued that the evidence indicated collusion between John and Marci. This was a permissible argument, and the trial court did not abuse its discretion by allowing limited evidence of the reconciliation.

### D. Marci's Bankruptcy

¶36. Prior to trial, the court ruled that "the fact that [Marci] filed a bankruptcy petition is admissible, and depending on the proposed testimony, the bankruptcy trustee may testify at

trial," but the court excluded "all other evidence regarding [Marci's] bankruptcy." At trial, the court sustained an objection to the following question by Marci's counsel: "[A]s we stand here now, . . . when would [Marci] . . . be able to get any money out of this case?" The trial court did not abuse its discretion. Marci may put on evidence of any type of damages proximately caused by Lainey's conduct in the alienation of John's affections, *see Gorman v. McMahon*, 792 So. 2d 307, 314-16 (¶¶18-23) (Miss. Ct. App. 2001), but the trial court properly prevented her from telling the jurors how large a verdict they needed to render in order for her "to get any money out of this case."

**CONCLUSION**

¶37.    For the foregoing reasons, we agree with Marci that the spoliation instruction lacked support in the evidence presented at trial, was erroneous, and was prejudicial. Accordingly, although we find no abuse of discretion in any of the trial court's challenged evidentiary rulings, we reverse and remand for a new trial.

¶38.    **THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

        **LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**